IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ROBERT B. MURRAY and MARGARET B. MURRAY, <br><br>   Plaintiffs, <br><br> v. <br><br> DECISION ONE MORTGAGE COMPANY, LLC., PREMIER MORTGAGE FUNDING, INC., NATIONS TITLE AGENCY, INC., and NATIONS TITLE AGENCY OF ALABAMA, INC., <br><br>   Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) **CASE NUMBER:  08-319** <br> ) <br> ) <br> ) <br> ) **JURY TRIAL DEMANDED** <br> ) <br> ) <br> ) <br> ) |

## COMPLAINT

1. NOW COME the Plaintiffs and as their Complaint against Defendants DECISION ONE MORTGAGE COMPANY, LLC., ("Decision One") PREMIER MORTGAGE FUNDING, INC., ("Premier") NATIONS TITLE AGENCY, INC., and NATIONS TITLE AGENCY OF ALABAMA, INC., (collectively "Nations Title") allege as follows:

### JURISDICTION

2. This action includes claims which arise under the statutes of the United States and this Court's jurisdiction is conferred by 28 U.S.C. § 1331.

### SUMMARY OF CLAIMS

3. These claims arise from a real estate loan transaction resulting in mortgage upon Plaintiffs' home in Baldwin County, Alabama. Specifically, Plaintiffs' claims against Defendant Decision One arise under the federal Truth in Lending Act ("TILA"), 15 U.S.C. S 1601 et seq. They also assert claims against Decision One, Premier and Nations Title under the Real Estate Settlement Procedures Act ("RESPA") 12 U.S.C. § 2601 et seq. The true costs associated with

the loan were never disclosed to Plaintiffs and Decision One is liable for damages for the failure to properly disclose those costs. RESPA claims are made against Decision One for paying a kickback to Premier for the referral by Premier of the Plaintiffs' loan at an above "par rate."[1] Also, any of the fees charged incident to the federally related loan closing were padded and duplicative.

## THE PARTIES

4.      Plaintiffs are both individuals of full age of majority and are resident citizens of the State of Alabama.

5.      Premier is a mortgage broker or "middleman."

6.      Nations Title acted as settlement agent for Decision One regarding the loan at issue and the title insurance agent for the title insurance sold in connection with the loan.

7.      Decision One is engaged in the originating, holding and selling of federally related mortgage loans. Decision One does business in this district by making, holding and selling mortgages loans on real property within this district. Decision One is a corporation with its principal place of business at 6116 Park South Drive, Suite 200, Charlotte North Carolina 28210.

## FACTUAL ALLEGATIONS

8.      On or about July 11th 2007, Plaintiffs obtained a non-purchase real estate mortgage loan from Decision One and brokered through Premier. Decision One is a residential mortgage lender.

---

[1] The "par rate" refers to the rate at which the lender will fund 100% of a loan with no premiums or discounts to the broker.

9. Premier did not close or fund the loan but simply took Plaintiffs' loan application, charged them exorbitant broker and processing fees, and referred the loan to Decision One in exchange for a kickback.

10. Plaintiffs granted Decision One a security interest in real estate which is used by them as their principal dwelling.

11. The loan was closed by Nations Title, a settlement agent.

12. Decision One was required to provide Plaintiffs certain disclosures pursuant to the federal Truth in Lending Act, 15 U.S.C. § 1601 et seq., (TILA) and its implementing regulations (Reg. Z).

13. Under TILA and Reg. Z, Decision One was required to clearly and conspicuously disclose the "amount financed" and the "finance charge," among other things, in connection with the loan.

14. Various fees charged incident to the extension of credit to Plaintiffs were illegal, unearned or padded and therefore not bona fide or reasonable.

15. Plaintiffs' disclosures reflect that they paid over $10,000 in closing costs associated with their loan. These costs included the following fees, all required by the lender and paid at closing:

-A fee paid to Premier in the amount of $2,810.00 for "Mortgage Broker Fee,"

-A fee paid to Decision One in the amount of $799 for "Underwriting Fee."

- A fee, paid to Premier, of $695 for "Broker Processing,"

- A fee, paid to Premier,, of $1,770.00 for "Broker Origination,"

- A fee, paid to Nations, of $395 for "Settlement or closing fee"

- A fee, paid to Nations, of $250 for "Abstract or Title search,"

- A fee, paid to Nations, of $533 for "Title Insurance,"

- A fee, paid to Nations, of $75.00 for "Wire fees,"

- A fee, paid to an undisclosed recipient, of $100 for "Recording Fees,"

- A fee, paid to an undisclosed recipient, of $55.00 for "Rec Fee/Req for Notice,"

- A fee of $1770 paid to Premier for "YSP" or kickback.

16. Under TILA and Reg. Z, "real estate related fees" may be *excluded* from the calculation of the finance charge only if such charges are bona fide and reasonable. Otherwise, they are finance charges which must be disclosed as such. Reg. Z, § 226.4(c)(7).

17. Charges for fees associated with the recording of mortgages may be excluded from the computation of finance charge only to the extent actually paid to the governmental entity. If those charges exceed the amount actually paid to record the mortgage, then they are finance charges and must be disclosed as such. 15 U.S.C. § 1605(d).

18. Assuming any of the charge of $100 imposed upon the Plaintiffs as a "recording fee" actually paid to a recording office for recording, the fee was padded and exceeded the amount charged by the probate office for the recording. Because the recording fee charge exceeds the fee actually paid to record the mortgage, it was a finance charge and should have been disclosed as such.

19. Other charges incident to the extension of the credit, such as the charge for "Abstract or Title Search" for example, were not bona fide or reasonable because the charges was marked up or padded in violation of RESPA. These title-related services were provided through third party companies hired by Decision One and/or its closing agent, Nations Title. The third parties that actually performed the title related services were paid amounts less than the

amounts paid by the plaintiffs. The difference was collected as a fee incident to the extension of credit and should have been disclosed as a finance charge.

20.     The TILA disclosures provided to the Plaintiffs in connection with their loan understated the finance because of the misallocation of charges incident to the extension of the credit.

21.     This misallocation of items that should have been *included* in the finance charge also resulted in an understatement of the Annual Percentage Rate ("APR").

22.     Because of the understatement of the finance charge and/or the APR Plaintiffs have retained an extended right to rescind the transaction pursuant to 15 U.S.C. § 1635.

23.     Premier collected a total of $7,045 ($2810+$695+$1,770+1770=$7,045) in connection with its involvement in the instant transaction.

24.     Premier collected unearned fees in connection with the instant transaction including but not limited to the YSP[2] paid to Premier by Decision One.

25.     The YSP paid to Premier by Decision One was an unearned kickback because the total compensation paid to Premier was not reasonable in light of any services that it may have performed.

26.     The YSP was duplicative and could not have bee earned because Premier performed no service for that fee and it had already been over compensated by the other fees that it charged.

27.     Furthermore even though Plaintiffs had paid Premier $5,275 to shop the mortgage market and get them the best rate available to them for a mortgage loan. Instead of doing so, Premier sold Plaintiffs a loan with an above "par rate."

---

[2] A yield spread premium ("YSP") is "a payment made by a [mortgage] lender to a [mortgage] broker in exchange for that broker's delivering a mortgage that is above the 'par rate' being offered by the lender." *1264 *Heimmermann v. First Union Mortgage Corp.*, 305 F.3d 1257, 1259 (11th Cir.2002).

28. The YSP was an unearned kickback paid to Premier by Decision One for the referral of a loan with an above par rate.

29. Decision One paid and Premier received a YSP (kickback) in connection with the referral of Plaintiffs' loan to Decision One.

30. At least the following fees collected by Nations Title were marked-up, padded, duplicative and/or unearned[3]:

- $250 for "Abstract or Title search,"
- $533 for "Title Insurance,"
- $75.00 for "Wire fees,"
- $100 for "Recording Fees,"
- $55.00 for "Rec Fee/Req for Notice,"

## COUNT I

## TILA VIOLATIONS

31. Plaintiffs reallege all the preceding allegations referenced as if set out here in full.

32. This count asserts claims against Defendant Decision One for TILA violations and rescission.

33. The disclosures issued by Decision One with respect to the Plaintiffs' loan violated the requirements of TILA and Reg. Z by failing to include in the finance charge certain charges imposed listed above and payable by Plaintiffs incident to the extension of credit as required by 15 U.S.C. §1605 and Reg. Z § 226.18. Such amounts should have been included in the finance charge disclosed to Plaintiffs.

34. Decision One is a "creditor" within the meaning of TILA, 15 U.S.C. § 1602(f).

---

[3] The term "unearned" as used herein means that no service was provided.

35. As a result of the understatement of finance charges, Plaintiffs have retained their right to rescind the mortgage.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants Decision One and, pursuant to 15 U.S.C. § 1640(a), award the following relief:

A) Statutory damages as provided in 15 U.S.C. §1640(a);

B) Actual damages in an amount to be determined at trial;

C) Rescission of the transaction, including a declaration that the Plaintiffs are not liable for any finance charges or other charges imposed by Defendant Decision One;

D) A declaration that the security interest in Plaintiffs' property created under the transaction is void, and an order requiring Decision One to release such security interest;

E) Return of any money or property given by the Plaintiffs to anyone, including the Defendants, in connection with the transaction;

F) A declaration that Plaintiffs have no duty to tender the loan proceeds, but in the alternative, if tender is required, a determination of the amount of tender obligation in light of all of the Plaintiffs' claims, and an order requiring tender on reasonable terms and over a reasonable period of time;

G) An award of reasonable attorney fee and costs; and

H) Such other relief at law or equity as this Court may deem just and proper.

## COUNT II

### RESPA VIOLATIONS OF DECISION ONE AND PREMIER

36. Plaintiffs reallege all the relevant preceding allegations referenced as if set out here in full.

37. This is a count against Decision One and Premier only.

38. Plaintiffs' loan is a federally related mortgage loan within the meaning of RESPA.

39. Decision One and Premier violated RESPA by paying or receiving fees, kickbacks or other things of value (including "Yield Spread Premiums" and the like) pursuant to an agreement or understanding that business incident to or a part of a real estate settlement service involving "federally related mortgage loans" would be referred to Decision One by Premier.

40. Pursuant to 12 U.S.C. §2607(d)(2), Plaintiffs are entitled to recover, and they hereby seek to collect, from the defendants an amount equal to three times the amount of any and all charges for "Yield Spread Premium" paid directly or indirectly by Plaintiffs(including any POC amounts such as "Yield Spread Premium" or the like), as well as any and all other amounts or damages allowed to be recovered by RESPA.

WHEREFORE, Plaintiffs demand judgment against Premier and Decision One for an amount equal to three times the amount of any and all charges for any "Yield Spread Premium" paid directly or indirectly by the Plaintiffs, attorney's fees, costs and for such other relief and award to which Plaintiffs may be entitled, or as determined just and appropriate by this court.

## COUNT III

### CLAIMS FOR VIOLATIONS OF RESPA BY NATIONS TITLE

41. Plaintiffs reallege all the relevant preceding allegations by reference as if set out here in full.

42. This is a count against Nations Title for paying and receiving unearned fees.

43.     Nations Title received unearned fees incident to each of the charges enumerated in paragraph 29 above.

44.     Services were provided for some of these charges by other parties and not Nations Title, with the exception of the title insurance charge, which is addressed below.

45.     No service whatsoever was provided by the "Rec Fee/Req for Notice," fee.

46.     Nations Title was required by RESPA and TILA to itemize these charges and list each person who was paid regarding the Plaintiffs' transaction.

47.     Nations Title did not list the third parties that actually performed the services as required and did not disclose any recipient for the charges but instead erroneously and falsely listed the each charge as payable to itself thereby concealing the unearned up-charge or mark-up of services provided by others.

48.     With regard to the charge for title insurance, Nations Title charged Plaintiffs more than the legal filed rate for the insurance provided, assuming title insurance was provided. (There was no disclosure of the identity of any title insurance company.) In other words Nations Title charged the filed rate and then added an unearned mark-up or surcharge to the actual title insurance premium.

49.     On information and belief the unearned surcharge was split by Nations Title and the title insurance company.

50.     The split of the unearned surcharge was either the payment of a kickback or was the payment and/or split of an unearned fee depending on the yet to be discovered arrangements and agreements between Nations Title and the title insurance company.

WHEREFORE, Plaintiffs demand judgment against Nations Title for an amount equal to three times the amount of any and all charges for any illegal "settlement services" paid directly

or indirectly by the plaintiffs, attorney's fees, costs and for such other relief and award to which Plaintiffs may be entitled, or as determined just and appropriate by this court.

PLAINTIFFS DEMAND TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

_____
EARL P. UNDERWOOD, JR. (UNDEE6591)
Law Offices of Earl P. Underwood, Jr.
Post Office Box 969
Fairhope, Alabama 36533-0969
Telephone:   (251) 990-5558
Facsimile:    (251) 990-0626
epunderwood@alalaw.com